CARPENTER, respondent, *v.* RODGERS, Territorial Auditor, appellant.

STATUTORY CONSTRUCTION — *retroactive effect.* Section 6 of the act of congress amending the organic act of this Territory, approved March 2, 1867, did not have a retroactive effect and give full force to a law from the date of its first enactment, which had been annulled by congress and re-enacted by a subsequent legislature of Montana.

STATUTORY CONSTRUCTION — *meaning of said section.* In passing said section 6, congress gave to subsequent territorial legislatures the right to re-enact certain laws that had been annulled by congress.

STATUTORY CONSTRUCTION — *historical facts referred to.* This court can refer to the history of the Territory to ascertain the proper construction of a statute which is ambiguous.

STATUTORY CONSTRUCTION — *repugnant proviso void.* A proviso which is inconsistent with any reasonable intention of the assembly which passed it, and repugnant to the body of the act, is void.

*Appeal from the First District, Madison County.*

IN January, 1868, Carpenter filed his affidavit, and applied for a peremptory writ of mandate. After a hearing at chambers, the court, HOSMER, J., issued the writ in accordance with the application, and Rodgers appealed. The facts appear in the opinion.

W. M. STAFFORD, district attorney, first district, and DAVIS & THOROUGHMAN, for appellants.

(No brief on file.)

WORD & SPRATT, for respondent.

The first legislature created the office of superintendent of public instruction. Acts 1865, 433. The law fixing the salary was passed by the second legislature on April 10, 1866. Acts 1866, 17. This last act was recognized as the law of this Territory, until its repeal by the amended organic act of March 2, 1867.

The legislature, elected under the provisions of the sixth section of this act, assembled on the first Monday of November, 1867. By an act approved December 24, 1867, this legislature re-enacted the law of April 10, 1866. Acts 1867, 255, § 6. The only difference between them is a slight increase of salary. The respondent was in office at the time of the passage of this act. An equitable construction of these statutes would award him his salary. The Territory has received the benefit of his labors, and he should be paid therefor. This is a controversy between the Territory and one of its citizens. A court will never presume that it was the intention of the legislature to perpetrate a fraud

by receiving respondent's labor, and declare that the law giving him his salary had no application to his case. Smith's Stat. and Const. Law, §§ 694, 695.

The last proviso of the sixth section of the act of congress of March 2, 1867, is repugnant to, and repeals all parts of the section in conflict with it. Does this section make all the laws passed in 1866 void? Does it suspend them until the election of the legislature provided for? The first part of this section makes the laws void, but the proviso repeals this part. Sedg. Stat. and Const. Law, title "Proviso;" Smith's Com., §§ 578, 579.

We contend that the laws of the two legislatures of Montana, in 1866, were not repealed by this act of congress. They were only suspended until an election of the legislature should take place, as provided for in the act. That election took place before the commencement of this suit. The act of April 10, 1866, was then in full force, fixing respondent's salary. Respondent is entitled to recover under this act, even if this court should be of the opinion that the act of December 24, 1867, is not applicable.

KNOWLES, J. This cause comes to this court on appeal from a judgment of the district court of the first judicial district of this Territory awarding the respondent, A. M. S. Carpenter, a peremptory writ of mandamus against the appellant, Wm. H. Rodgers, as territorial auditor, commanding him to issue to respondent territorial warrants for the sum of $253.33, for salary as superintendent of public instruction for the Territory.

The facts presented in the record are as follows: Carpenter was appointed by the acting governor for this Territory superintendent of public instruction, and confirmed by the legislative council on the 4th day of March, 1867. He entered upon and performed the duties of that office from that time until January 4, 1868. The law providing for the office of superintendent of public instruction was enacted by the first legislative assembly. No salary was provided for such officer until a law was enacted fixing the same by the

second legislative assembly.  On the 2d day of March, 1867, two days before the appointment of Carpenter to said office, congress amended the organic act of this Territory.

The construction of section 6 of this amendment is the only difficulty presented to the court in deciding this case.

It is contended by the respondent in the first place that the act of the fourth legislative assembly, entitled "An act to define the duties of territorial superintendent of public instruction," was a re-enactment of the law of the second legislative assembly upon the same subject, which rendered this act of the second legislative assembly valid.

The portion of the section under consideration which it is claimed had this force and effect reads as follows :

"And be it further enacted, That all acts passed at the two sessions of the so-called legislative assembly of the Territory of Montana, held in eighteen hundred and sixty-six, are hereby disapproved and declared null and void, except such acts as the legislative assembly herein authorized to be elected shall, by special act in each case, re-enact."

Let it be granted that the act of the fourth legislative assembly, entitled "An act to define the duties of territorial superintendent of public instruction," was a re-enactment of the statute upon the same subject by the second legislative assembly.  Does this section have the force claimed for it ?  It is certain that the fourth legislative assembly did not expect that their act upon this subject was to have any retroactive effect, for the last section of their act reads as follows :

"This act to take effect and be in force from and after its passage."

We cannot think that congress intended to say that the acts of the legislative assembly of eighteen hundred and sixty-six, which the fourth legislative assembly should by special act in each case re-enact should be valid and go into effect from the date of the first enactment.  The more reasonable view of what congress did intend to do is this : Congress no doubt entertained the opinion that should it

disapprove of and declare null and void the laws of the legislative assemblies of 1866, in an amendment to the organic act of the Territory, without giving power to any subsequent legislature to re-enact them, it would amount to a prohibition upon their re-enactment. Hence congress intended to give the privilege to any subsequent legislative assembly to re-enact them. To give this section any other construction would make it inconsistent with any reasonable intention on the part of congress. It had been decided by some of the courts of this Territory that the legislative powers thereof had lapsed, and that all the laws of the second and third legislative assemblies were void. In part to remedy the evils which it was found by this decision the people of this Territory were liable to suffer, this amendment to the organic act was passed.

At least the part of section 6 of this amendment under discussion does not declare that a re-enactment of an act passed by the legislative assemblies of 1866, by the legislative assembly authorized by the amendment, would make it valid. It declares that such acts of said legislative assemblies as the legislative assembles authorized by it shall specially in each case re-enact, it does not disapprove of and declare null and void. This construction, however, leaves all those acts which might be specially re-enacted, in each case, just where they were before the amendment to the organic act. And if upon a mature consideration by the courts it should be decided that such acts were valid, our statute books would present the anomaly of having two sets of statutes, identical, and purporting, as in this case, to go into force at different times. Or take the other construction, that upon the special re-enactment of these statutes, they should be made valid and be in force from their passage in 1866. No matter if this re-enactment should be years hence. We would still have the same unprecedented condition of affairs of two statutes, identical, and each going into effect at different periods. Should any of these be criminal enactments, for years they might be considered null and void. All at once upon their re-enactment

they would be considered valid and in force from the time of their first enactment. Is it reasonable to suppose that congress intended to leave the door open to any such state of affairs? If so, then instead of removing the evils by which the people of this Territory were beset, it has multiplied them and failed to satisfy the necessity for any such amendment and done violence to the very object of its passage. Take the other construction. If congress intended to leave the door open to test the validity of all laws which the legislative assembly it had authorized should in each case specially re-enact, it must have seen that it was leaving the door open for a vast amount of litigation instead of dissipating it and multiplying the opportunities for fraud and sharp practice upon the people of the Territory by designing men in subsequent legislative assemblies. If it should be found that such acts were valid, then all that would be necessary to bring them into force again would be to have them re-enacted. They would take effect from their first passage. And as in the former case, laws that had long been considered void, would come into force to affect the rights of property and liberties of the citizen. It will be seen from the first proviso in this section that congress supposed the door had been left open only to test the validity of the laws of 1866, where vested rights had accrued. Yet if the construction we have just considered be correct, then the opportunity is presented to test the validity of all laws re-enacted, whether there were any vested rights involved or not. We think there is ambiguity enough in this section to allow us to go outside of the wording of the statute to find the intention of congress. When this is done, there is no doubt but that the construction we have given to this portion of this section is the correct one. The last proviso in this section is more difficult of construction than any other portion of it. It provides "That no legislation or pretended legislation in said Territory, since the adjournment of the first legislative assembly, shall be deemed valid until the election of the legislative assembly herein provided for shall take place."

It almost appears in this that congress, no matter what may have been the actual intention, does say that when the legislative assembly provided for should take place that all legislation and pretended legislation in said Territory since the first legislative assembly should be deemed valid. Every legislative act ought to be so construed, if possible, as to make it consistent with itself. To give such a construction to this proviso as the one above, however, would make congress say in the first part of this section that all acts of the two legislative assemblies of 1866 were null and void, but that the legislative assembly authorized might have the liberty, by a special act in each case, to re-enact them. And in the latter part of it, that upon the election of the legislative assembly provided for, not only all the legislation of these two assemblies, but of any other legislative assemblies or pretended legislative assemblies since the first legislative assembly, should be deemed valid, which would do away with any necessity of their re-enactment. Surely there is ambiguity enough presented here to permit a court to look at the extraneous facts to find the proper construction of this statute.

It is, we believe, a part of the history of this Territory, that about the time this amendment to our organic act was passed, the governor of this Territory had convened an extra session of the legislative assembly. The only solution of this remarkable proviso is, that congress intended to annul the laws of this assembly until the election of the legislative assembly authorized should take place. Had that legislative assembly continued its labors, we would, no doubt, be forced to the construction that, upon the election of the legislative assembly provided for, all its acts would be deemed valid, if this is the proper construction of this proviso. Perhaps, however, it is too broad in its terms to receive any construction which would confine its application to one legislative assembly.

There is one thing to be observed in this proviso. It is not in the usual form of one. The usual effect of a proviso is to limit, in some enumerated particulars, the general effect

of the purview of an act. This, however, if it has the force and effect claimed for it by the respondents, would repeal the purview of this section, and leave it no functions to perform whatever. In fact, this proviso giving it the construction claimed for it, is totally repugnant to the whole purview of the section, and makes the act, instead of an annulling act, one enacting that upon the happening of a certain event which the amendment to the organic act, of which this section is a part, provides, shall take place not only all legislation, but all pretended legislation in this Territory since the first legislative assembly shall be deemed valid. Some authority has been cited to the effect that, when a proviso is repugnant to the purview of a statute, the proviso should stand, and be deemed a repeal of the purview.

KENT says: "A saving clause in a statute is to be rejected when it is directly repugnant to the purview or body of the act, and could not stand without rendering the act inconsistent and destructive of itself." See 1 Kent, 522.

Again, in discussing the rule that had been laid down in relation to a proviso, he says: "But it may be remarked upon this case of Fitzgibbon, that a proviso repugnant to the purview of the statute renders it equally nugatory and void as a repugnant saving clause. And it is difficult to see why the act should be destroyed by the one and not by the other; or why the proviso and the saving clause, when inconsistent with the body of the act, should not both of them be equally rejected." See 1 Kent's Com. 523.

It is difficult to see why a proviso which makes an act inconsistent with any reasonable intention on the part of the legislative body which enacted it, and makes it inconsistent with itself, and is totally repugnant to the body of the act, and destroys its effect altogether, should stand. After a mature consideration we are impelled to the conclusion that it should not; and, as the effect claimed for this proviso is as above stated, we are compelled to hold if that is its proper construction it is void.

In accordance with the views above expressed, it is

VOL. I—13.

ordered that the judgment of the court below be reversed, and that a peremptory writ of mandate be denied.

*Writ of mandate denied.*

WARREN, C. J., concurred.

The legislature, by an act approved January 12, 1872, appropriated $241.12, in payment of Carpenter's claim for services as territorial superintendent of public instruction.